READING FINANCE & SECURITIES CO. v. HARLEY.

(Circuit Court of Appeals, Third Circuit.  April 25, 1911.)

No. 25 (1,470).

1. TROVER AND CONVERSION (§ 2*)—PROPERTY SUBJECT OF ACTION—INTEREST CERTIFICATES—CONSTRUCTION.

A finance company, promoting the organization of a life insurance company, issued to plaintiff a certificate reciting that it was to be exchanged for a stock certificate, after incorporation, for a certified number of shares, and that it was a certificate of deposit, and certified that plaintiff had subscribed and paid by note for 6,043 shares of the capital stock of the proposed company, and was dated, executed, and sealed. In an action against the finance company for conversion of the certificate, it contended that it was entitled to hold the same as collateral for plaintiff's notes.  *Held*, that the certificate was a thing of value, which could properly be the subject of an action of trover, and was not a mere receipt for payments on subscriptions of stock to be thereafter delivered.

[Ed. Note.—For other cases, see Trover and Conversion, Dec. Dig. § 2.*]

2. PLEDGES (§ 16*)—COLLATERAL SECURITY—EVIDENCE OF DEPOSIT.

Defendant finance company, promoting the organization of an insurance company, issued a certificate of interest to plaintiff, reciting that he was entitled to certain shares of the company's stock, for which the promoters had received plaintiff's note. On the same day the finance company delivered to plaintiff a letter reciting that the certificates of deposit had been delivered to plaintiff at $15 per share; the company having accepted plaintiff's notes therefor, with the understanding that plaintiff would not sell any of the shares for less than $20 a share, the company agreeing to transfer all or any portion of the certificates from time to time, and allow plaintiff a commission on the subscription price, provided plaintiff reduced his notes to the extent of the net sum due on the certificate so transferred, as transfers were made, and that all sales made by plaintiff on time should be in consideration of notes taken in the name of the company, and in consideration thereof it agreed to advance plaintiff commissions and profits on such of the notes as were commercially satisfactory to it.  *Held*, that such letter did not evince an intention on the part of the company as a matter of law that the certificates showing plaintiff's interest should be left with it as collateral security for plaintiff's notes.

[Ed. Note.—For other cases, see Pledges, Dec. Dig. § 16.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Action by F. C. Harley against the Reading Finance & Securities Company.  Judgment for plaintiff (183 Fed. 1023), and defendant brings error.  Affirmed.

John G. Johnson, Oliver Lentz, and E. H. Deysher, for plaintiff in error.

Alex. Simpson, Jr., and Harry F. Kantner, for defendant in error.

Before BUFFINGTON and LANNING, Circuit Judges, and YOUNG, District Judge.

LANNING, Circuit Judge.  The Reading Finance & Securities Company, which we will call the Finance Company, acting as fiscal agent for the sale of the capital stock of a company which it was proposed to incorporate under the name of the Citizens' Life Insurance

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Company of America, issued on March 10, 1910, two certificates, one of which was in the following form:

"Authorized Capital, $500,000. This certificate to be exchanged for certificate of stock after incorporation. No. 435. 6,043 Shares. The Reading Finance & Securities Company (Incorporated), Reading, Pa. Certificate of Deposit. This is to certify that F. C. Harley, Reading, Pa., has subscribed and paid by note for six thousand forty-three shares of the capital stock of the proposed the Citizens' Life Insurance Company of America. Date March 10, 1910. W. J. Cotter, President. W. Geo. Whitfield, Treasurer. Shares $10.00 each. [Corporate seal attached.]"

On the same day, March 10, 1910, the Finance Company issued to Harley another certificate, the same in form and substance, except that it was for 3,957 shares. It will be observed that the two certificates were for 10,000 shares. On the day that these two certificates were issued, the Finance Company delivered to Harley a letter, of which the following is a copy:

"Reading, Pa., March 10, 1910.

"Mr. F. C. Harley, Reading, Pennsylvania.

"Dear Sir: We enclose you certificates of deposit for ten thousand shares of stock of the Citizens' Life Insurance Company of America (now organizing) at fifteen ($15) dollars per share, accepting your notes of four months without interest for same, with the understanding that you will not sell or dispose of any shares at a price less than twenty ($20) dollars per share. We agree to transfer all or any portion of said certificates from time to time, and allow you the regular agent's commission of 10 per cent. on the subscription price, provided you reduce your notes to the extent of the net sum due us on the certificates so transferred, as transfers are made. It is further stipulated and agreed that on all sales made by you on time the notes for payment on account of same shall be taken in the name of this company, and in consideration thereof we agree to advance your commissions and profits on such of said notes as are commercially satisfactory to us.

"Very truly,          The Reading Finance & Securities Company,
                              "W. J. Cotter, President."

This letter was delivered to Harley in the office of the Finance Company. The certificates therein mentioned were not taken away by Harley, but were left by him with the Finance Company. He also at the same time gave to the Finance Company his notes for $150,000, representing the value of the 10,000 shares mentioned in the letter at $15 per share. Between March 10 and June 23, 1910, he sold his rights to a portion of the 10,000 shares, and took in payment therefor cash or notes which he turned over to the Finance Company, with instructions to issue to his vendees certificates for the rights so purchased by them, and to issue to him a new certificate for the residue of his rights. Thereby his notes for $150,000 were reduced. On June 23, 1910, he demanded possession of the certificates then standing in his name, one being the original certificate for 6,043 shares, and the other being a certificate for 709 shares, which represented the unsold portion of the rights in the 3,957 shares mentioned in the second of the original certificates. The Finance Company refused the demand, and Harley thereupon commenced this action for damages for alleged conversion of the certificates. He recovered a judgment for $5,000. Upon the writ of error sued out by the Finance Company, its counsel contends that there is no evidence to support the judgment, and that the Finance

Company was not bound to deliver the certificates to Harley previous to the payment of his notes.

[1] We cannot accept as correct the contention of the plaintiff in error that the certificates are mere receipts for payments on subscriptions of stock to be thereafter delivered. The Finance Company did not so treat them. At the trial of the action, it contended that it was entitled to hold them as collateral security for Harley's notes. It therefore dealt with them as things of value, which could properly be the subject of an action in trover and conversion. Indeed, it furnished to Harley printed blanks which he could and did fill out and sign as authority to the Finance Company to transfer to the new subscribers rights in portions of the shares mentioned in his certificates. By such transfers, one of the two certificates issued to him on March 10, 1910, was reduced from 3,957 to 709 shares; the remaining shares being represented by the certificates issued by the Finance Company to Harley's assignees or vendees—the so-called new subscribers.

[2] Nor can we say, as matter of law, that the letter of March 10, 1910, evinces an intention on the part of the Finance Company and Harley that the certificates should be left with the Finance Company as collateral security for Harley's notes. The letter is not clear. One cannot decide, from its language alone, what was the exact nature of the contract between the parties. At the trial, the dispute was whether the Finance Company held the certificates as collateral security for Harley's notes or for the mutual convenience of the parties in recording transfers of rights to shares represented by the Harley certificates. If the certificates were held by the Finance Company as collateral, there was no conversion of them by the Finance Company; if not, there was. This was the issue fought out before the jury in the court below. It was a question of fact for the jury to consider. That question they decided in favor of Harley's contention, and we can discover no reason for disturbing the judgment entered on their verdict.

The judgment is accordingly affirmed, with costs.